```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION AT LEXINGTON**

ERDDIE MILLER,                    )
                                  )
    Plaintiff,                    )    Civil Action No. 09-99-JMH
                                  )
v.                                )
                                  )
MICHAEL J. ASTRUE,                )
COMMISSIONER OF SOCIAL            )    **MEMORANDUM OPINION AND ORDER**
SECURITY,                         )
                                  )
    Defendant.                    )
                                  )

          **   **   **   **   **

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 9 and 12].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   OVERVIEW OF THE PROCESS**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2.  An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

## II. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279

F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**III. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Erddie Miller ("Plaintiff") filed for disability insurance benefits on March 5, 2007, alleging an onset of disability of February 26, 2007 due to degenerative disc disease of the thoracic spine, cervical strain, carpal tunnel syndrome, chronic obstructive pulmonary disorder ("COPD"), and anxiety disorder. [Administrative Record (hereinafter, "AR") at 161-172 and 19]. Plaintiff's claim was initially denied on June 27, 2008. [AR at 27.] On January 16, 2009 the Appeals Council declined to review the Administrative Law Judge's (hereinafter, "ALJ") decision. [AR at 9.] On February 5, 2009 the Appeals Council reopened the case due to evidence which was submitted with the initial appeal but never associated with Plaintiff's file, but again declined to review the ALJ's decision. [AR at 4.]

Plaintiff was fifty-five years old at the alleged onset of disability. [AR at 36.] She completed the eleventh grade and obtained a GED. She later became a certified nursing assistant

3

("CNA"). [AR 91.] Plaintiff has past relevant work experience as a CNA. [AR 121-122.]

The ALJ made the following findings in determining that Plaintiff was not entitled to disability benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since February 26, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571, *et seq.*, 416.920(b) and 416.971, *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD) due to nicotine abuse; status-post carpal tunnel release of the dominant right hand, and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.152(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, that is, lifting, carrying, pushing and pulling up to 100 pounds occasionally, 50 pounds frequently, sitting/standing/walking up to six hours each in an eight hour day, but with the following nonexertional limitations: she is to avoid all aerobic activities, such as running, jumping or fast-paced assembly lines; she is to avoid rapid or repetitive flexion or extension of the wrists; she is to avoid more than occasional use of the hands for reaching, grasping, handling, pinching or feeling; and she is to avoid concentrated exposure to dust, odors, fumes, gases, chemicals or poorly ventilated spaces.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 9, 1952 and was 55 years

      old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   The claimant has no transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from February 26, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[AR at 32-37.]

**IV. ANALYSIS**

Plaintiff asserts that the ALJ improperly found that she was not disabled because the ALJ's opinion was not supported by substantial evidence. Plaintiff set forth several reasons for her argument that the ALJ's decision was not supported by substantial evidence.

    **A.   The ALJ's decision was supported by substantial evidence regardless of a conflict between the VE's testimony and the DOT.**

Plaintiff asserts that the vocational expert's ["VE"] testimony relied on by the ALJ was in direct conflict with the Dictionary of Occupational Titles ("DOT"). The VE testified at the administrative hearing that Plaintiff could engage in "weighing,

5

measuring, checking, and inspecting types of work activities" as well as "cashier counter clerk, sales." [AR at 124.] The VE also testified that he understood that due to Plaintiff's age and other restrictions, Plaintiff would be considered disabled if she was only able to work jobs below a medium exertional level. [AR at 125.]

The VE then gave the DOT numbers for the two jobs he listed as within Plaintiff's residual functioning capacity: weighing, measuring and checking (DOT 550.687-018) and cashier/sales clerk (DOT 211.462-010). The DOT categorizes the cashier job as "light work," requiring a person to lift up to twenty pounds occasionally. The weighing, measuring, and checking job was the representative job of "dye weigher" in the DOT, categorized as "medium work," and requiring a person to lift up to fifty pounds occasionally and ten to twenty pounds frequently, as well as frequent reaching and handling.

Plaintiff argues that "the representative job description is contraindicated by the hypothetical also, despite the opinion proffered by Dr. Crystal to the contrary." [Plaintiff's Motion for Summary Judgment 12.] Plaintiff does not further explain this "contraindication" but the Court assumes she is referring, at least in part, to the fact that the ALJ's hypothetical specifically stated that Plaintiff could only engage in work that required occasional reaching, but the DOT classifies a dye weigher as a

position which requires frequent reaching.

An ALJ has an affirmative duty to "elicit a reasonable explanation for the conflict [between the VE's evidence and the DOT] before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A.). At the hearing, the ALJ must "inquire, on the record, as to whether or not there is such consistency" between the VE's evidence and the DOT. *Id.* At Plaintiff's hearing, the ALJ asked the VE, "Dr. Crystal, is your testimony consistent with the Dictionary of Occupational Titles?" to which Dr. Crystal, the VE, replied, "Yes, sir." [AR at 126.]

Plaintiff seems to be claiming that the ALJ did not interrogate the VE sufficiently in order to elucidate whether a conflict existed. Plaintiff "was afforded a full opportunity to cross-examine [Dr. Crystal]. The ALJ had no duty under S.S.R. 00-4p to interrogate him further." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)(citing *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 374 (6th Cir. 2006). The VE's unequivocal affirmative response that his testimony was consistent with the DOT did not put the ALJ on notice that he should inquire further into the matter. Immediately following that exchange between the VE and the ALJ, Plaintiff, who was represented by counsel, had the opportunity to fully cross-examine the VE regarding any portion of his testimony. Plaintiff did not question the VE further regarding

7

any conflicts between his testimony and the DOT.

>   **B. The ALJ did not place too much weight on Dr. Brown's opinion.**

Plaintiff also takes issue with the amount of weight the ALJ gave the opinion of Dr. Brian Brown, who only saw Plaintiff once but whose notes indicated that Plaintiff appeared to be preoccupied with establishing disability. [AR at 35-36.] Plaintiff states that both Dr. Brown and the ALJ placed an inordinate amount of emphasis on Plaintiff's smoking as a cause of her health problems, and did not fully consider Plaintiff's testimony regarding the extent of her pain and limitations. Plaintiff further argues that Dr. Brown was not a treating physician and therefore the ALJ should have articulated the reasons explaining why his opinion was given more weight than the opinions of other physicians who examined or treated Plaintiff.

Plaintiff does not state who her treating physician was during the relevant time period. The identity of the treating physician, if any, is also not clear from the administrative record. Plaintiff argues in her brief that the ALJ incorrectly accepted the opinion of Dr. Brown over the opinion of Dr. James Owen. The ALJ's findings, however, demonstrate that he accepted the opinions of both Dr. Brown and Dr. Owen. Furthermore, the examination notes of Drs. Brown and Owen are not contradictory. It appears that Dr. Brown did not assess Plaintiff's limitations in her hands and wrists, but focused on her pulmonary and digestive tract

8

complaints. Dr. Brown did not state an opinion in his notes regarding Plaintiff's other complaints. Conversely, Dr. Owen focused on Plaintiff's limitations and pain related to her hands, wrist, neck and back. The ALJ acknowledged both doctors' examinations and notes in his decision. He stated that he gave "great weight" to the observations of Dr. Brown, but clearly also accepted the examination notes of Dr. Owen, stating, "[a]ccording to the examination by Dr. Owen, however, the claimant had normal strength, sensation, reflexes and coordination" and "Dr. Owen noted some mild residual numbness in the right hand that did not affect the claimant's strength, coordination, or reflexes." [AR at 35-36.]

It is not the duty of this Court to "resolve conflicts in evidence" or "decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The record supports the fact that the ALJ considered all of the evidence before him, that he did not reject the opinion of a treating physician, if any, and that Dr. Brown's observations comprised only part of the ALJ's reasoning for his determination.

  **C. The ALJ's residual functional capacity assessment was supported by substantial evidence.**

Plaintiff argues that the ALJ's residual functional capacity assessment was also unsupported by substantial evidence because the ALJ determined that Plaintiff could frequently lift fifty pounds, but could only use her hands occasionally for reaching, grasping, handling, pinching or feeling, and could never participate in

aerobic activity. Plaintiff states that it would be impossible to frequently lift fifty pounds without engaging in aerobic activity and while only occasionally using her hands for the above activities.

The Court agrees with Plaintiff that the ALJ's findings are inconsistent. Plaintiff cannot frequently lift fifty pounds while only occasionally using her hands and avoiding all aerobic activity. This inconsistency is, however, a harmless error because it did not affect the ALJ's hypothetical or the VE's response, and thus, was not part of the substantial evidence the ALJ relied upon in making his determination. In the hypothetical, the ALJ did not mention limitations on the amount of weight Plaintiff could lift on a frequent basis. [AR at 123.] The hypothetical did include the limitations on the use of the hands, as described above, and precluded aerobic activity. The jobs the VE identified are both within the ALJ's findings of Plaintiff's weight lifting restrictions. A cashier is required to exert up to twenty pounds of force occasionally, and a dye weigher is required to exert twenty to fifty pounds of force occasionally and ten to twenty five pounds of force frequently. [DOT 211.462-010 and DOT 550.687-018.] Plaintiff argues that the inconsistencies demonstrate that the ALJ's residual functioning capacity assessment was not supported by substantial evidence. The minor inconsistencies in the ALJ's residual functioning capacity assessment, however, do not

10

demonstrate that the it was unsupported by substantial evidence. The weight restrictions, limitations on aerobic exercise, use of the hands, and restrictions on exposure to air pollutants were substantiated by medical evidence in the administrative record.

The ALJ considered the medical records, notes, and opinions of at least seven distinct physicians, medical facilities, and other physical or mental health professionals, who treated or examined Plaintiff. [AR at 33-35.] The ALJ's residual functioning capacity determination specifically discusses the examinations and conclusions of Dr. Owen and Dr. Brown. The ALJ notes that "no treating source has expressed an opinion regarding the claimant's functional capacity or on the ultimate issue of disability." [AR at 36.] The ALJ provides an explanation for his residual functioning capacity assessment, which he bases on the opinions of Drs. Brown and Owen, and states that he considered all of Plaintiff's symptoms documented in the record. [AR at 35.]

The ALJ gave more weight to the opinions of Drs. Brown and Owen than to the testimony of Plaintiff. The ALJ determined that "the limitation of the use of the hands that [Plaintiff] described were not supported by the medical evidence of record." [AR at 35.] It is not the duty of the district court to second-guess the ALJ, as "[c]redibility determinations are entitled to considerable deference." *Howard v. Comm'r of Social Sec.*, 276 F.3d 235, 242 (6th Cir. 2002). The inconsistencies between the physicians'

assessments of Plaintiff's limitations and her own reporting of them "provide[ed] a reasonable basis for this credibility determination." *Id.* The fact that the ALJ gave greater weight to the findings of physicians who examined Plaintiff than to Plaintiff's testimony does not demonstrate that the ALJ's opinion was not supported by substantial evidence. In fact, the physicians' notes and findings contained in the administrative record are "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." Thus, there is substantial evidence to support the ALJ's assessment of Plaintiff's residual functioning capacity.

## VI. CONCLUSION

Plaintiff has failed to demonstrate that the ALJ either committed a reversible legal error or made a decision not supported by substantial evidence. Accordingly, **IT IS ORDERED:**

1) that Plaintiff's Motion for Summary Judgment [Record No. 9] be, and the same hereby is, **DENIED**; and

2) that Defendant's Motion for Summary Judgment [Record No. 12] be, and the same hereby is, **GRANTED**.

This the 15th day of December, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge